# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| MARVIS ROBINSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CV409-071 |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

Proceeding *pro se*, Marvis Robinson brought this slip and fall case against the United States Postal Service. Docs. 2, 4. On a rainy August afternoon in 2007, she slipped and fell upon entering a Hinesville Georgia post office that she had patronized numerous times before. Doc. 24-5 at 13, 14, 19-21. It happened just inside the single door of the building's rear, unmanned "Postal Boxes" area, where there were no employees; that area also remained beyond their sight. Doc. 24-5 at 17-20; doc. 24-1 at 1-6. The door lacked an awning, so some rain would enter the building when the door was opened. Doc. 24-5 at 28.

Robinson fell moments after she stepped through the door, while dealing with her umbrella. Doc. 24-5 at 21. She explained that

> I opened the door with my right hand. I had the umbrella in my left. I had just stepped over the threshold and was attempting to close the umbrella. The door was slowly closing behind me and, as I was trying to pull the umbrella, I didn't make it. By that time I had slipped and fallen, and my body had just picked up off the floor and I landed on the floor.

*Id.*.[1] A postal employee who attended Robinson after she fell noticed that "it was wet on the floor around her" and that "the water appeared to be 'shiny' and reflecting in the light." Doc. 24-1 at 3.

Plaintiff seeks compensation for her "injuries and related problems," and states that she "want[s her] husband compensated" and "ha[s] medical bills." Doc. 1 at 3-5. The Postal Service answered, doc. 15, and this Court **GRANTS** the motion of the United States to be substituted as the defendant. Doc. 24 at 1.[2] The United States now

---

[1] *See also id.* at 22 (water was then "possibly" dripping off her umbrella onto the floor); *id.* at 27 (as she stepped across the single door's threshold with her umbrella and attempted the close the door, she "was distracted by the difficulty [she] was having of trying to close the door, if only for a few seconds . . . . between the umbrella and the rain coming down on my back and into the building because the door wasn't closing fast enough -- I was trying to close the door, you know, just for for a second and focus on the umbrella, and in a few seconds, I was on the floor. I couldn't close the door. I had no power over closing the door, but I was trying to close my umbrella."). The government points to this conduct as supporting its comparative negligence defense, doc. 24 at 10-11, which need not be reached in light of the result reached below.

[2] Negligence actions against the Postal Service can only be advanced under Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq. See, e.g., Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006). The FTCA's waiver of immunity is limited to the United States and not its agencies or employees. 28 U.S.C. § 2679. Therefore, the United States is the sole defendant here. *Id.*; *Meszaros ex rel.*

moves to dismiss, if not for summary judgment. Doc. 24. Robinson, notified of the summary judgment portion of the motion, doc. 25, opposes and has tendered rebuttal summary judgment evidence. Doc. 28. Because both parties rely on evidence outside of the pleadings, the Court will reach the government's summary judgment motion.

## I. GOVERNING STANDARDS

The Court must apply Georgia substantive law. *Creekmore v. United States*, 905 F.2d 1508, 1510 (11th Cir. 1990) ("The Federal Tort Claims Act requires us to apply state law to determine the substantive liability of the United States."). But federal law governs procedure, so the Fed. R. Civ. P. 56 summary judgment standards[3] apply.

---

*Meszaros v. United States*, 2006 WL 1528939 at *2 (M.D. Fla. Jun. 2, 2006) ("The FTCA specifically states that a plaintiff's exclusive course of action under the FTCA is against the United States...."). The above caption has been amended, the Clerk is **DIRECTED** to amend the docket caption, and all subsequent filings shall conform.

[3] Rule 56 of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if it might affect the outcome of the case under the governing law. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1518 (11th Cir. 1990) (citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving

Robinson's claim is viewed in light of the Postal Service's "statutory duty to exercise ordinary care to keep its premises safe, which includes inspecting the premises to discover possible dangerous conditions of which the proprietor does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises." *Benefield v. Tominich*, 308 Ga. App. 605, 708 S.E.2d 563, 566 (2011) (quotes, footnotes and alterations omitted).

Nevertheless, the slip and fall plaintiff must first identify an actionable "hazard." *Drew v. Istar Financial, Inc.*, 291 Ga. App. 323, 325 (2008) (whether a hazardous condition exists is the threshold question in a slip-and-fall case). Even at that, the plaintiff

> must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked

---

party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Rule 56(e)).

Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." *Tidmore v. BP Oil Co./Gulf Prods. Div.*, 932 F.2d 1384, 1387 (11th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court may consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties, though it is not required to do so. Fed. R. Civ. P. 56(c)(3).

> knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier.[4] A plaintiff's evidentiary proof concerning the second prong of this test is not, however, shouldered until the defendant first establishes negligence on the part of the plaintiff.

*Benefield*, 708 S.E.2d at 566 (quotes, footnotes and alterations omitted; footnote added). And when a proprietor shows that it lacked actual knowledge of the hazard,

> the case [then] turns on whether constructive knowledge of the alleged hazard can be imputed to the [owner]. Constructive knowledge may be shown by demonstrating that (1) an employee of the defendant was in the immediate vicinity of the fall and had an opportunity to correct the hazardous condition prior to the fall, or (2) the hazardous condition had existed for a sufficient length of time that it would have been discovered and removed had the proprietor exercised reasonable care in inspecting the premises.

*Id.* at 566-67 (quotes and footnotes omitted, brackets omitted and added). Constructive knowledge, for that matter, may be inferred upon evidence that the owner lacked a reasonable inspection procedure. *Id.* at 567.

---

[4] Showing that the proprietor had knowledge while the patron did not is another way of saying that the proprietor had *superior* knowledge. *See Benefield*, 708 S.E.2d at 566; *Witt v. Ben Carter Properties, LLC*, 303 Ga. App. 107, 108-09 (2010) (proof that an invitee tripped or fell, without more, does not establish liability on the part of the property owner or occupier; rather, the basis for imposing liability is the owner or occupier's superior knowledge of the hazard). Hence, the plaintiff must show that the Postal Service's knowledge of the rainwater just inside of its door was superior to hers.

So to prevail at the summary-judgment stage based on the lack of constructive knowledge of an actionable hazard, "the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." *Id.* (quotes and footnote omitted). "[T]he plaintiff need not show how long the hazard had been present unless the owner has first demonstrated its inspection procedures." *Id.* (quotes, footnote and brackets omitted). The inspections, however, need only be conducted with ordinary, not extraordinary, care. *Witt*, 303 Ga. App. at 110.

The issue in *Benefield* turned on competing knowledge over a convenience store/gas station's curled-up, front-entrance floor mat. The plaintiff store patron had long been aware of the mat, but not of its curled-up corner, over which she tripped and fell. *Benefield*, 708 S.E.2d at 567. Because "approximately *five hours* elapsed between the time the mat was definitively last checked [by the store's employee] and Benefield's fall," *id.*, a jury would have to resolve the issue, as "hazardous spills and debris are certainly not uncommon at this type of establishment, and therefore, inspections may be required more frequently than every five hours." *Id.* at 568.

Nor was it dispositive that the plaintiff admitted that she was not looking down when she tripped over the mat. The Georgia "Supreme Court has rejected any requirement that an invitee look continuously at the floor for defects, holding that the invitee is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe." *Id.* (quotes and footnote omitted).

## II. ANALYSIS

Critical here is what Robinson does not dispute. First, she knew it was raining that day. Indeed, water was entering the building -- dripping off her and her own umbrella -- as any reasonable person would expect. She was wearing "what appeared to be inexpensive, discount store shoes which were slick and without any tread on the bottom," doc. 24-1 at 4, and by her own admission was distracted by her unsuccessful effort to manage her umbrella when entering through the building's door.

Second, the Post Office's employees (again, plaintiff entered the rear of the building) that day were unaware of the wet spot. Doc. 24-1 at 3. There were no employees in the area when she fell, and none could see it. Doc. 24-6 at 38.[5] Robinson has also failed to rebut the sworn

---

[5] The Court is citing its docketing software's "electro-print" pagination at the top of

statement from the janitor that day,[6] who was responsible for maintaining the lobby areas. He inspected that area that morning, as is his practice, and that included "regularly walk[ing] through the lobby areas at other times during the day." Doc. 24-1 at 5 ¶ 3. He saw no water, *id.* ¶ 4, and would have cleaned it up if he did. *Id.* "If we had received reports of water having been tracked into the rear lobby I would have immediately cleaned the area." *Id.* "The first time I heard of water being tracked into the rear lobby [that day] was after someone reported that [plaintiff] had fallen." *Id.* He was "asked to mop the rear lobby area after [her] fall. When doing so [he] noted only a minimal amount of moisture that had apparently been tracked in by customers."[7] *Id.* ¶ 5. Robinson could not say how long the wet spot had existed; she could only

---

each page, and not the actual, printed pagination.

[6] The janitor was Brian Mitchell, who was one of two building janitors who inspected the building, inside and out, each morning and at closing. Doc. 24-1 at 1. It was also their job to clean up any known spills, puddles, or other hazards. *Id.*

[7] Robinson has tendered the written statement of another patron, Shantrile Walker, who shortly before the incident walked through the same door and "almost fell because [there] was a big puddle of water on the floor." Doc. 28-4 at 2. However, Walker's statement is unsworn, and thus inadmissible hearsay. And Robinson fails to show that it can reduced to admissible evidence at trial. *See McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (*Celotex* allows "otherwise admissible evidence to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form"); *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999).

speculate about it. Doc. 24-6 at 40-41.

Robinson's case fails at both the threshold and secondary levels. She is

> bound by the rule that [business] proprietors are not liable to patrons who slip and fall on floors made wet by rain conditions unless there has been an unusual accumulation of water and the proprietor has failed to follow reasonable inspection and cleaning procedures. . . . The risk of harm imposed by some accumulation of water on the floor of business premises during rainy days is not unusual or unreasonable in itself, but is one to all who go out on a rainy day may be exposed and which all may expect or anticipate.

*Diaz v. Wild Adventures, Inc.*, 289 Ga. App. 889, 892-93 (2008) (cite omitted), cited in *Escobedo v. Wal-Mart Stores, Inc.*, 2009 WL 3277319 at * 2 (N.D. Ga. Oct. 7, 2009) ("Georgia courts have determined that the common knowledge of the fact that patrons bring rain in with them from outdoors on a rainy day which can then accumulate in entrance ways, is a risk of harm shared by all who go out on a rainy day"), *and Rodas v. Bi-Lo, Inc.*, 2008 WL 2415269 at * 2 (S.D. Ga. May 21, 2008); *see also Drew*, 291 Ga. App. at 325 (office worker did not show that water puddle into which she stepped as she entered lobby of office building was a hazardous condition that exposed her to an unreasonable risk of harm, as required for office worker to prevail in her premises-liability action against building owner; she conceded that it was raining when she

9

entered building, did not point to any evidence that the substance into which she stepped was anything other than rainwater, and did not show that accumulation of water at entrance of lobby was unusual).

Even were Robinson to surmount that obstacle, the rest of her case turns on whether the Post Office had constructive knowledge of the alleged hazard, *Benefield*, 708 S.E.2d at 566, which "may be shown by demonstrating that (1) an employee of the defendant was in the immediate vicinity of the fall and had an opportunity to correct the hazardous condition prior to the fall, or (2) the hazardous condition had existed for a sufficient length of time that it would have been discovered and removed had the proprietor exercised reasonable care in inspecting the premises." *Id.* at 566-67. Robinson has shown neither. And her speculation as to the length of time the wet spot might have pre-existed her fall cannot prevent summary judgment. *Diaz*, 289 Ga.App. at 892.

Nor, for that matter, has she rebutted the janitor's statement that the wet spot beneath her showed just a minimal amount of moisture (*i.e.*, it was not an unusual accumulation), or shown that the postal service's inspection and cleaning procedures were unreasonable. *See Walker v. Sears Roebuck & Co.*, 278 Ga. App. 677, 680 (2006) ("Store proprietors

are not liable to patrons who slip and fall on floors made wet by rain conditions unless there has been an unusual accumulation of water and the proprietor has failed to follow reasonable inspection and cleaning procedures."), *quoted in Escobedo*, 2009 WL 3277319 at * 2; *see also Walker*, 278 Ga. App. at 680 ("It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas.") (quotes, cite and alteration omitted).

Finally, the Court agrees with the government that any claims sought to be raised by Robinson's husband -- even assuming he was made a party to this case and represented himself -- would be barred by his failure to exhaust his FTCA administrative remedies. Doc. 24 at 14-15; a *Drew v. United States*, 217 F.3d 193, 196-197 ("the FTCA prohibits the filing of a civil action against the Government unless the underlying claim is 'first presented' to the appropriate federal agency and subsequently denied."), *aff'd en banc*, 231 F.3d 927 (4th Cir. 2000); *accord Scarbrough v. Astrue*, 327 F. App'x 827, 829 (11th Cir. 2009); *Markcum v. United States*, 2011 WL 531396 at * 1 (M.D. Fla. Feb. 8, 2011) (dismissing husband's unexhausted claim from wife's personal

injury action against postal service). It would also fail because hers fails (*i.e.*, it is derivative of her claim). *Behforouz v. Vakil*, 281 Ga. App. 603, 604 (2006) (husband's claim for loss of consortium was derivative of wife's slip and fall claim against mother, and thus, in absence of any evidence of breach of duty by mother to wife, husband could not maintain loss of consortium claim against mother).

Accordingly, the defendant's summary judgment motion (doc. 24) should be **GRANTED** and this case should be **DISMISSED WITH PREJUDICE.**

**SO REPORTED AND RECOMMENDED** this  23rd  day of June, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA